Low *v.* Graydon.

⎯⎯⎯⎯•●•⎯⎯⎯⎯

JAMES LOW and others *vs.* WILLIAM GRAYDON and others.

Where debtors effected a compromise with a part of their creditors, who agreed to accept payment of one half the amount of their claims, in full satisfaction, the debtors promising that if they should make an assignment they would secure the payment of the fifty per cent agreed to be paid, by preferences in such assignment, after confidential debts; and subsequently the debtors made an assignment, in which they gave a preference, first, to some debts which were not confidential, as well as to those which were, and second, to the payment of a number of creditors, including those who had assented to the compromise; *Held,* that the asignment was not fraudulent as to the creditors who were not parties to the compromise.

Debtors making an assignment, may give a preference for the payment in full of their just debts, though owned by one who has purchased the same, (being the paper of the assignors,) at a large discount.

An assignment for the benefit of creditors, reserving nothing to the assignors and containing no provisions that the law holds sufficient to vitiate it, is not to be adjudged fraudulent and void because of a clause preferring certain creditors who had previously signed a composition deed agreeing to take fifty cents on the dollar and release the assignors; where the composition

deed and the assignment were separate and distinct transactions, and were not parts of one original plan or agreement, or to be construed with reference to each other.

The case of *Spaulding* v. *Strang*, (32 *Barb.* 237,) distinguished from the present case.

APPEAL from a judgment entered upon the report of a referee, dismissing the complaint.

The action was brought by judgment creditors of the firm of Graydon, McCreery & Co. to set aside a general assignment made by them, dated, acknowledged and filed on May 7, 1861, to John C. Martin and John W. Graydon; and transfers of collaterals made by them about the same time. The action was brought against the members of the firm of Graydon, McCreery & Co. their assignees, and against Samuel Graydon and four other of their favored creditors.

The grounds on which, by their complaint and evidence, the plaintiffs claimed the assignment and transfers to be invalid were: 1. That they were in fraud of creditors. 2. That they created a trust, or reserved a benefit for the use of the assignors.

*First.* In aid of the former claim four charges were made: 1. That Samuel Graydon purchased at and under 50 cents on the dollar, eighty-two promissory notes of Graydon, McCreery & Co. to the amount of $86,675.54, (for the amount due him on which the assignment prefers him,) with money furnished by the assignors; as their agent; and on a secret trust for their benefit. 2. That Samuel Graydon also purchased, with money of the assignors and for their benefit, a judgment, on April 11, 1861, obtained by one John W. Earnshaw against them for $3761.06, on Samuel Graydon's claim, on which he would come in as a creditor under the general clause of the assignment. 3. That Samuel Graydon's firm of Graydon, Swanwick & Co. purchased at 50 cents on the dollar $14,990.04 of Graydon, McCreery & Co.'s promissory notes, which they then compromised with Graydon, McCreery & Co. at 50 cents on the dollar; receiving

$110.44 cash, and the balance, $7494.80 in the business paper of Graydon, McCreery & Co., indorsed by them—their indorsement of which was preferred in Graydon, McCreery & Co.'s assignment—and that Graydon, McCreery & Co. furnished the money with which to make these purchases. 4. That $13,158.69, preferred by the assignment to Mrs. Mary Ann Graydon, was not due her.

*Second.* In aid of the position that the assignment and transfers created a trust or reserved a benefit for Graydon, McCreery & Co. the plaintiffs contended that a compromise effected by Graydon, McCreery & Co. in March, 1861, at 50 cents on the dollar, with certain of their creditors and their assignment, made in May, 1861, preferring the compromised amounts were to be construed together as being part of one scheme or transaction by which Graydon, McCreery & Co. through their assignment, coerced their compromising creditors into accepting such compromise, which thus constituted a benefit reserved to the assignors by their assignment.

Upon the trial, before a referee, the plaintiffs having rested, the defendants, without offering any evidence, moved for a nonsuit, and the nonsuit was granted.

The material facts are sufficiently stated in the opinion of the court.

*A. F. Smith,* for the appellants, plaintiffs.

*John E. Parsons,* for the respondents, defendants.

*By the Court,* SUTHERLAND, J. Graydon, McCreery & Co. composed of the defendants, William Graydon, Thomas A. McCreery, George W. Seeley and William A. Scott, failed in business and suspended payment, on or about February 1, 1861. The defendant, Samuel Graydon, was not a member of the firm of Graydon, McCreery & Co. but was a member of the firm of Graydon, Swanwick & Co. composed of Samuel Graydon, John W. Graydon, and one Thomas Swanwick.

The Graydons named were brothers. In February, soon after their failure, Graydon, McCreery & Co. undertook to transfer and gave out that they had transferred to Samuel Graydon, their bills receivable, to the amount of $200,000, and upwards. This transfer was formally made, by the bills receivable being placed in the hands of one of their clerks, as nominally the clerk or attorney of Samuel Graydon. These receivables remained in the possession of the clerk, nominally as the clerk of Samuel Graydon, till very late in April, or about the first of May, 1861, and the moneys from time to time received on account thereof, nominally and formally for or in the name of Samuel Graydon, were immediately paid over to Graydon, McCreery & Co. The purpose of this transaction was to protect the receivables from attachments, temporarily, that Graydon, McCreery & Co. might gain time to propose and perfect a compromise with their creditors, and thus avoid an assignment.

The purpose was evidently illegal and the answers admit that this transaction was void as to the creditors.

After the suspension of Graydon, McCreery & Co. and in February and March, 1861, they from time to time gave Samuel Graydon moneys to the amount, in all, of $19,000, to be used in purchasing or compromising their bills payable and other liabilities. It is probable, that all these moneys were furnished after the transaction in February, by which Graydon, McCreery & Co. undertook to transfer the $200,000 and over of their receivables to Samuel Graydon. These moneys were deposited by Samuel Graydon, with his firm of Graydon, Swanwick & Co. he keeping no individual bank account. After the suspension of Graydon, McCreery & Co. and after the transaction in February, as to the $200,000, and over, of receivables, and in March and April, 1861, prior to about the middle of April, Samuel Graydon purchased and received into his possession, one hundred and thirty-eight of Graydon, McCreery & Co.'s promissory notes, amounting in

the aggregate to $143,133.50, in most cases of parties who had received them from Graydon, McCreery & Co. at rates varying from 35 to 50 per cent, the greater portion at 40 per cent, and only a very few at 35 per cent. The evidence leaves no room for doubt, that for most of this paper Samuel Graydon gave checks of Graydon, Swanwick & Co. In one or two instances, I believe only one, it appears, that Samuel Graydon gave his note, which he afterwards paid. The purport of Samuel Graydon's testimony is, on this point, that keeping no individual bank account, he gave the checks of Graydon, Swanwick & Co. payable to his own order, which checks he treated and considered as his own. In some cases parties from whom notes were purchased could not say whether Samuel Graydon's, or Graydon, Swanwick & Co.'s check was given, and in a few cases, they could not say how they were paid, whether in cash or by check. There is no direct evidence that Graydon, McCreery & Co. furnished any money to buy up or compromise any of the 138 notes, beyond the $19,000, except as to three notes held by Willard, Wood & Co. amounting to $1510.72, sold April 11, 1861. The evidence of Mr. Willard certainly tends to show that one of the Graydons, of Graydon, McCreery & Co. was the party who negotiated for the sale of the notes, and he made an entry in his check book purporting that the notes had been sold to Graydon, McCreery & Co. but he did not recollect whether he received cash or check, and considering the evidence of Samuel Graydon, and the general course undoubtedly pursued in buying up the paper, and the absence of any apparent motive for making these small notes an exception to this general course, I am inclined to think that these notes were purchased, ostensibly at least, for Samuel Graydon, and were paid for by check of Graydon, Swanwick & Co. and I have therefore included them in the 138 notes above stated to have been purchased by Samuel Graydon.

It is clearly quite immaterial on the question of fraud or fraudulent intent in this case, whether the 138 notes were

Low *v.* Graydon.

paid for with checks of Samuel Graydon, or of his firm, and as it is to be presumed that Samuel Graydon has accounted or will account with his firm for this use of the firm's name, it may be said that Samuel Graydon, ostensibly at least, purchased and paid for all the 138 notes.

After the suspension of Graydon, McCreery & Co. and before their assignment, they did propose to compromise their debts, and between March 7th and their assignment, did from time to time offer to creditors a written agreement of compromise for signature, which many of their creditors signed, but which many of their creditors refused to sign, offering however to compromise or sell their debts for cash, at certain rates of discount. To several of these last mentioned creditors, members of the firm of Graydon, McCreery & Co. said that they were not purchasing their paper and had not the means of purchasing, *referring them to Samuel Graydon as a purchasser of their paper.* The correspondence with Joseph W. Carson & Co. of Baltimore, shows conclusively, that Samuel Graydon bought several of the 138 notes, at the express request of Graydon, McCreery & Co.

To a party of whom Samuel Graydon purchased one of the 138 notes he said, that Graydon, McCreery & Co. were offering (by way of compromise) all that they could pay ; that it was doubtful whether they could pay that ; that he (Samuel G.) was paying all he could afford to pay ; that he did not think the assets of the firm would pay him, but that he was disposed to help his brothers' firm all he could. To another party of whom he bought several of the notes, he said that his only object in buying was to keep his brothers in the firm of Graydon, McCreery & Co.

To Mr. Bond, whom Samuel Graydon employed to purchase many of these notes, he said that his motive in buying the paper was, that otherwise it might get into the hands of the enemies of Graydon, McCreery & Co.

To Heiser & Co. note brokers, whom Samuel Graydon employed to purchase many of these notes, he said that

Graydon, McCreery & Co. had great difficulty in getting their creditors to accept their settlement; that what they offered was equitable and all they could pay; that as he had some money, *he would take the place of those who would not take the settlement, and accept the creditors' place in the settlement; that he wanted to do justice to the creditors and to Graydon, McCreery & Co. in getting paper from those who would not settle, and to take their place in the settlement;* that his object in taking their paper was to assist Graydon, McCreery & Co. in making a compromise, in effecting a settlement; that he did not know but he might lose money by buying the paper at that price; that he would like to get the paper out of the street, for it would help them in getting a settlement, for if they were sued by these parties, and paid their notes in full, it would destroy their ability to carry out their settlement as proposed.

A few days before Graydon, McCreery & Co. made their assignment, and on or about the fourth day of May, 1861, Samuel Graydon, surrendered to Graydon, McCreery & Co. 42 of the 138 notes, which had been so purchased by him *as notes* which had been bought by him for them with the $19,000 received of them; the 42 notes, amounting in the aggregate $41.467.92; and the amount which had been paid for the 42 notes exceeding by $228.68, the amount which had been received, that sum was at the same time paid by Graydon, McCreery & Co. to Samuel Graydon.

At or about the same time, and a few days before their assignment, Graydon, McCreery & Co. delivered to Samuel Graydon 225 of their notes receivable, amounting to about $157,000, as collateral security for the payment of 82 of the 138 notes which had been so purchased by Samuel Graydon, as notes which had been purchased for himself; the 82 notes amounting in the aggregate to $86,675.54.

At or about the same time, and a few days before the assignment, Samuel Graydon surrendered to Graydon, McCreery & Co. the remaining 14 of the 138 notes which he had

so purchased, as notes which he had purchased for his firm of Graydon, Swanwick & Co. upon receiving from Graydon, McCreery & Co. twenty of their business notes receivable, indorsed by them, and a small amount in cash, (about $110,) for fifty per cent of the fourteen notes ; the fourteen notes amounting in the aggregate to $14,990.04, and the twenty notes to $7494.80 ; and at or about the same time, by the direction of Samuel Graydon, an entry of the last transaction was made in the books of Graydon, Swanwick & Co ; Graydon, McCreery & Co. being in form charged with the amount of the fourteen notes, (not specifying or naming the notes,) and Samuel Graydon being credited with fifty cents on the dollar of these notes, and Graydon, McCreery & Co. credited with the twenty notes, (specifying them,) and with the small amount in cash, as in settlement of the fourteen notes.

By their assignment, dated the 7th of May, 1861, Graydon, McCreery & Co. preferred Samuel Graydon in words, for " the amount justly due or owing to him," upon the 82 notes, which had been so purchased by him, and so secured by the pledge of 225 notes, the " total amount " of the 82 notes being stated at $86,675.54 ; and by the assignment, Graydon, Swanwick & Co. were preferred for the amount of 20 notes so indorsed and transferred by Graydon, McCreery & Co. for or upon the surrender of 14 of the notes which Samuel Graydon had so purchased, the amount of the 20 notes being stated at $7494.80.

By the schedules filed under the act of 1860, Samuel Graydon is stated as a creditor " to the amount " of the 82 notes, of which a list is given.  The complaint, among other things, substantially charges, that the preference given by the assignment to Samuel Graydon, as the owner and holder of the 82 notes, was one of the concluding acts of a scheme to defraud the plaintiffs and other creditors of Graydon, McCreery & Co. ; that all of said 82 notes were purchased and held by Samuel Graydon as their agent ; that a large portion of these notes were purchased by Samuel Graydon

with moneys of Graydon, McCreery & Co. and the others, with moneys advanced by Samuel Graydon, under an arrangement and understanding between him and Graydon, McCreery & Co. that he was ostensibly to be secured by collaterals and preferred in their assignment, for the full amount of the 82 notes, for the benefit of the assignors beyond the amount so advanced by him.

As to this branch of this case, the referee found that there was no such understanding or arrangment, and that Samuel Graydon did not purchase any of the 82 notes as the agent of Graydon, McCreery & Co. or for them; that he purchased all of the 82 notes with his own money and for himself.

And the referee found further, (as to issues of fact incidently arising on the trial, and created by the evidence, but not *directly* created by the pleadings, unless I have overlooked some portion of them,) that the 42 notes surrendered to Graydon, McCreery & Co. on or about the 4th of May, 1861, were purchased by Samuel Graydon for Graydon, McCreery & Co. with moneys furnished by them, less $228.68 which they paid him on the surrender of the notes; and that the 14 notes surrendered by Samuel Graydon to Graydon, McCreery & Co. at or about the same time, as notes which had been purchased for Graydon, Swanwick & Co. were not purchased for Graydon, McCreery & Co.; that no part of the moneys paid for them was received from Graydon, McCreery & Co.; and that the same were not purchased under any arrangment with Graydon, McCreery & Co. further than that, as to the notes purchased of Joseph W. Carson & Co. of Baltimore, Graydon, Swanwick & Co. made the purchase with their own money and for their own account, *but at the request of Graydon, McCreery & Co.*

As to this branch of the case, and as to the findings of the referee, so far as they have been referred to, the counsel for the plaintiffs insists upon two propositions; 1st. Adopting and availing himself of the finding of the referee, that Samuel Graydon did purchase the 42 notes as the agent of

Low v. Graydon.

Graydon, McCreery & Co. and with their moneys, and such agency not having ceased until the surrender of the 42 notes on or about the 4th of May, the counsel insists that it follows as matter of law, that Samuel Graydon could not purchase for himself, (during the period he was purchasing the 42 notes,) without violating the trust implied in or arising from the confidential relation of agency, and that the legal consequence is, that Samuel Graydon could not be and was not a creditor, at the time of the assignment, on account of his purchase of the 82 notes, beyond the amount actually paid.

Assuming that the plaintiffs, as creditors, could avail themselves of the principle of law referred to, if the case permitted its application, as to which there may be doubt, it does not appear to me, that the proportion is sound either in logic or law. It certainly does not follow from the fact that the 42 notes were purchased by Samuel Graydon, as agent, that 82 notes were purchased by him as agent; and if the agency was limited to the purchase of notes as far as moneys furnished by Graydon, McCreery & Co. would go, of course the confidential relation and trust had the same limit. If it be conceded that the specific notes, which should be selected as the notes bought with the moneys of Graydon, McCreery & Co. was not determined, until about the time the 42 notes were selected and surrendered, I can not see the application of the principle of law referred to, to the purchase of the 82 notes, *if the agency was limited to the purchase of notes with moneys of Graydon, McCreery & Co.*

The proposition which has been considered, may be viewed as admitting that Samuel Graydon bought the 82 notes with his own money intending to make them his own.

But the second proposition is, that Samuel Graydon bought the 82 notes expressly for Graydon, McCreery & Co. and not for himself, and that it was only when they found an assignment inevitable, that the 42 notes were set off to

Graydon, McCreery & Co. and the 82 notes to Samuel Graydon.

I must trust, that any one, whose duty it may be to examine this case and the immense mass of evidence in it, will see, without any further special reference by me to the pleadings or evidence, that the only material practical question involved in this proposition; or indeed, as to whether the findings of the *referee, so far as they have been referred to*, were authorized by the pleadings and evidence, is this; were the circumstances under which the 138 notes were purchased, or connected with, or relating to their sale or purchase, especially the conduct and declarations of the parties at the time, viewed in the light of the other conceded facts and circumstances of the case, inconsistent with the truth of Samuel Graydon's testimony denying the fraudulent arrangement and intent charged in the complaint, and any agency in the purchase of the notes, except as to the 42, or so inconsistent with it, that the referee should have disregarded it?

As the result of a careful examination of the case and of the voluminous evidence in it, I have above preliminarily stated all the material facts and circumstances bearing on this question, with a view to it, and its determination. What do they show? They show, that the transaction in February, as to the $200,000 and over of receivables, was illegal and void as to creditors. This is avowed by the answers. They show, that the purpose of this transaction was probably not only to protect these receivables from attachments, but to enable Graydon, McCreery & Co. to collect or receive money from them with which to buy up their paper. They show, that probably the $19,000 furnished Samuel Graydon for such purpose, came from the $200,000 and over of receivables, whilst in the hands of the clerk, nominally of Samuel Graydon. They show that Graydon, McCreery & Co. knew at the time, that Samuel Graydon was purchasing their paper largely beyond what he could purchase with their

$19,000, and that he was so purchasing not only with their knowledge but with their approbation, and they may tend to show, at all events it may be conceded that they show, that all of their paper bought by Samuel Graydon was bought at their instance and request, and that they expected to be benefited by such purchase. But these facts and circumstances also show that Graydon, McCreery & Co. hoped or expected to be benefited by such purchase of their paper *in a certain way.* They show, that from the time of their failure until probably after the purchase of all of the one hundred thirty-eight notes by Samuel Graydon, Graydon, McCreery & Co. were anxious and tried to avoid making an assignment by compromising with their creditors; that they met with difficulties in doing this, and that they hoped or expected that the purchase of their paper by Samuel Graydon would enable them to complete the compromise and avoid an assignment. Why are not these facts and circumstances just as consistent with the theory that there was no agency as to the purchase of the eighty-two notes, as with the theory that there was? I can not see why they are not. They show, it is true, an opportunity for fraudulent scheme; but they also show an opportunity to do what was done relative to the purchase, security, and preferment of the eighty-two notes with an honest purpose, at least with a purpose of which other creditors cannot complain, if the eighty-two notes represented honest debts to their full nominal amounts, and Samuel Graydon paid his own money for them.

If the evidence had shown and the referee had found that the eighty-two notes were purchased in anticipation of the assignment, and under an express arrangement that Samuel Graydon was to be secured by the pledge of collaterals and preferred in the assignment, as he was secured and preferred, that finding would not have been at all inconsistent with his finding, that he did not purchase the eighty-two notes as the agent of Graydon, McCreery & Co. nor under the fraud-

ulent arrangement charged in the complaint for their benefit, but for himself and for his own benefit.

If the referee had found that Samuel Graydon purchased the eighty-two notes under an express arrangement that he was to join in the compromise, if an assignment could be avoided, but if it could not, that then he was to be secured by a pledge of collaterals and preferred in the assignment for the whole amount of the eighty-two notes, even that finding would not have reached the issues as to agency and fraud, it being conceded that Samuel Graydon paid for the eighty-two notes with his own money, and that the notes represented *bona fide*, honest debts, to their full nominal amounts.

What has been said as to the force and tendency of the facts and circumstances outside of Samuel Graydon's evidence, and as to the finding of the referee as to the purchase of the eighty-two notes, applies equally to the finding of the referee as to the purchase of the fourteen notes, compromised and surrendered, as notes bought by Samuel Graydon for Graydon, Swanwick & Co.

If the words, "·the amount now justly due or owing to him from the assignors upon their promissory notes now held by him, total amount due about $86,000," were intentionally used in preferring Samuel Graydon as the holder of the eighty-two notes, this only goes to show that the drafter of the assignment was in doubt, and perhaps that the assignors and Samuel Graydon, were in doubt, how much, under the circumstances was justly due or owing to him (Samuel Graydon) on account of the notes.

And I think what has been said as to the force and tendency of the facts and circumstances outside of the evidence of Samuel Graydon, and as to the findings of the referee, as to the eighty-two and fourteen notes, in the main, applies to his finding as to Earnshaw's judgment for $3,761, the payment of which to Samuel Graydon, as assignee, was secured by pledge of ten of the business notes of Graydon, McCreery & Co. a few days before the asignment.

Low *v.* Graydon.

The payment of $250 by Graydon, McCreery & Co. perhaps should not, according to the testimony of Mr. Leeds, be considered as a payment to Earnshaw on account of the judgment.

It does not appear, I think, when the entry in the books of Graydon, McCreery & Co. insisted upon by the counsel for the plaintiffs as showing that Graydon, McCreery & Co. had in the first instance given Joseph Graydon the ten collaterals to secure him as indorser of Samuel Graydon's note for the eighty per cent of the judgment, was made. It was probably between 30th of April, the date of Samuel Graydon's note, and the assignment of Graydon, McCreery & Co. but it may have been made before Graydon, McCreery & Co. had abandoned all idea of avoiding an assignment by completing a compromise, and if it was, that circumstance would tend to lessen the weight of the evidence. It does not appear that Samuel Graydon had any knowledge of this entry at the time it was made, or before trial. Though, when the assignment of the judgment was signed by Earnshaw, the name of the assignee was not filled in, yet subseqently the name of Samuel Graydon was inserted as assignee, and he in fact gave his note for eighty per cent of the judgment, which note he paid.

Upon whole, though I have had more difficulty in reconciling the evidence (some of which I have not adverted to) relating specially to the transactions as to Earnshaw's judgment, so shortly before Graydon, McCreery & Co.'s assignment, with the finding of the referee, "that the assignment to Samuel Graydon of this judgment, was taken by him for his own account and not as agent or trustee, or in any way" for Graydon, McCreery & Co. than with any other branch of this case; yet I am inclined to think that the finding is not so clearly against the weight of evidence, as to authorize us to grant a new trial on that ground.

Another branch of this case is this: The compromise agreement proposed by Graydon, McCreery & Co. to their

creditors was to the effect, that the creditors who signed it would take fifty per cent of their demands in satisfaction thereof, to be paid at the average time of twelve months from the 1st of April, the original notes to be put in the hands of a third party named, until the fifty per cent should be paid, and then followed a provision, " that if said Graydon, McCreery & Co. shall find it necessary to make an assignment, or other general disposition of their property, and shall secure the payment of the said fifty per cent of our debts, either by preference in such assignment, (after confidential debts,) or by turning out property, or collaterals, to secure the same, and if by such means we shall eventually receive payment to the extent of said fifty per cent, then and without regard to the time above limited such payment, it shall be in full discharge of our respective debts."

Many of the creditors of Graydon, McCreery & Co. signed the compromise agreement and received their note for fifty per cent of their demands, these creditors retaining their original notes, or placing them in the hands of the third party named in the compromise agreement.

Several of these creditors were told by the member of the firm of Graydon, McCreery & Co. who applied for their signatures, that it would be better for them to sign the compromise paper, for those who signed would, in case of an assignment, be preferred next after the confidential debts. The creditors who signed the compromise agreement, or many of them, were preferred in schedule B, of the assignment for fifty per cent of their demands, but they were not so preferred after confidential debts only. Samuel Graydon was preferred in schedule A, in effect, for the whole amount of the eighty-two notes, which did not represent confidential debts ; nor does it. appear that any collaterals or property was ever turned out to secure these creditors.

The counsel for the plaintiffs insists, on the authority of *Spaulding* v. *Strang,* (36 *Barb.* 310, that the assignment was made in pursuance of the compromise agreement, and

they should therefore be construed together, and that the two operated to coerce their creditors, and that the assignment was therefore void. In *Spaulding* v. *Strang,* the assignment recited that it was made in pursuance of the compromise agreement, and the judge found as a fact that it was so made. In this case the assignment contained no such recital, nor was the assignment in fact made in pursuance of the compromise arrangement, and the referee has so found. The assignment in this case violated the compromise agreement; it preferred debts which were not confidential before the fifty per cent of the demands of the creditors who signed the compromise agreement and it clearly relieved those creditors from the compromise arrangement, and notwithstanding it and the assignment, these creditors could, I think, either prosecute the whole of their original demands to judgment, or claim and take, if they could get it, the fifty per cent under schedule B. of the assignment, and the balance of their original demands, under the general provision of the assignment for the payment of all other just debts and liabilities.

I think the cases cited by the counsel to show that these creditors could not claim under the assignment beyond the fifty per cent do not apply.

Conceding the authority of *Spaulding* v. *Strang,* I do not think that case applies to this.

I see no materiality or pertinency in the evidence offered to show that Gillilan, one of these creditors, had elected to be a creditor to the whole amount of his original claim. The action of the assignors had made him such creditor to the whole amount, independent of any election on his part.

There were some exceptions to exclusion of evidence and other rulings on the trial; but I find no material error in any of these rulings which would justify an order for a new trial.

I doubt whether the referee was strictly right in striking out, as evidence, any part of the schedules, filed under the

act of 1860, but I do not see the materiality of any part of the schedules, especially in view of the finding of the referee, that the whole amount of the eighty-two notes was justly due or owing to Samuel Graydon.

Upon the whole, I think the judgment must be affirmed, with costs.

[NEW YORK GENERAL TERM, June 3, 1867. *George G. Barnard, Davis* and *Sutherland,* Justices.]